UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                          :
B.P. and S.H.,                            :
                         Plaintiff,       :
                                          :
         -against-                        :          14 Civ. 1822 (LGS)
                                          :
NEW YORK CITY DEPARTMENT OF               :          ORDER AND OPINION
EDUCATION                                 :
                         Defendant.       :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/3/14

        Plaintiffs B.P. and S.H., on behalf of their child, S.H., bring this action against the New

York City Department of Education ("DOE") pursuant to the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*  Plaintiffs seek review of the December 19,

2013, decision of the New York State Review Officer ("SRO Decision") upholding the

September 5, 2013, decision of the Impartial Hearing Officer ("IHO Decision"), which found

that the DOE had provided a free and appropriate education ("FAPE") to S.H. during the 2012-

2013 school year.  The parties have cross-moved for summary judgment.  Because the SRO

Decision is sufficiently supported by the record, Plaintiffs' motion is denied and the DOE's

motion is granted.

## I.    STATUTORY FRAMEWORK

        The IDEA mandates that states receiving federal special education funding provide

disabled children with a FAPE.  20 U.S.C. § 1412(a)(1)(A); *M.W. ex rel. S.W. v. New York City

Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013).  "To ensure that qualifying children receive a

FAPE, a school district must create an individualized education program ('IEP') for each such

child." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012).  An IEP is a

written statement that "'describes the specially designed instruction and services that will enable

the child to meet' stated educational objectives and is reasonably calculated to give educational

benefits to the child." *M.W.*, 725 F.3d at 135 (quoting *R.E.*, 694 F.3d at 175); *see* 20 U.S.C. § 1414(d).

New York delegates the development of an IEP to a local Committee on Special Education ("CSE"). *See* N.Y. Educ. Law § 4402(1)(b)(1) (McKinney). At a minimum, the CSE is composed of the student's parent(s), a special education teacher, a regular education teacher if the student participates in a regular education program, a school psychologist, a school district representative, an individual who can interpret the instructional implications of evaluation results, a school physician and a parent of another student with a disability. *See* Educ. § 4402(1)(b)(1)(a. "The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program." *R.E.*, 694 F.3d at 175.

If a parent believes that the DOE has failed to provide a FAPE to his or her child, the parent may "unilaterally place their child in a private school at their own financial risk and seek tuition reimbursement." *M.W.*, 725 F.3d at 135 (citing *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 9-10, 16 (1993)). To seek reimbursement, the parent must first file a due process complaint with the DOE, which triggers administrative proceedings involving an impartial due process hearing before an Impartial Hearing Officer ("IHO"). *See M.W.*, 725 F.3d at 135 (citing 20 U.S.C. §§ 1415(b)(6), (f); Educ. § 4404(1)). The IHO hearing is governed by the three-part *Burlington/Carter* test, as construed by New York Education Law § 4404(1)(c): "(1) the DOE must establish that the student's IEP actually provided a FAPE; should the DOE fail to meet that burden, the parents are entitled to reimbursement if (2) they establish that their unilateral placement was appropriate and (3) the equities favor them." *M.W.*, 725 F.3d at 135 (footnote omitted).

The IHO's decision may be appealed to a State Review Officer ("SRO").  *See* Educ.

§ 4404(2); *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 225 (2d Cir. 2012) (citing *Grim*

*v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379-80 (2d Cir. 2003)).  The SRO's decision is the

final administrative decision.  An aggrieved party, however, may seek review of the SRO's

decision by commencing an action in federal district court.  *See* 20 U.S.C. § 1415(i)(2)(A);

*M.W.*, 725 F.3d at 135-36.

## II.     BACKGROUND

### A.     S.H.'s Educational History

S.H. is an 11 year-old boy with autism spectrum disorder, attention deficit hyperactive

disorder, a sensory integration disorder, obsessive compulsive disorder and Tourette's syndrome.

S.H. exhibits deficits in cognition, academics, communication skills, sensory integration and

regulation, including food sensitivity, social interaction and emotional regulation.  S.H. displays

tantrum behaviors when dysregulated, including screaming or crying, as well as self-injurious

behaviors, such as head banging and hitting himself on the head, when frustrated or

overwhelmed and when in a large crowd or noisy environment.

For the four years prior to the school year in question (2012-2013), S.H. attended the

Rebecca School in a classroom with seven students, one teacher and three paraprofessionals (a

"7:1+3 class") and received speech-language therapy, occupational therapy ("OT") and

counseling services.

### B.     S.H.'s Individualized Education Program for 2012-2013

On March 1, 2012, the DOE convened a meeting of the CSE to develop S.H.'s IEP for

the 2012-2013 school year.  The CSE consisted of S.H's parents, a school psychologist who also

served as the District's representative, a social worker from the Rebecca School and S.H.'s

teacher, who participated by telephone.  To develop the IEP, the CSE used several pre-existing reports, including a Rebecca School progress report, dated December 2011; S.H.'s July 9, 2011, physical therapy evaluation; his November 2, 2010, classroom evaluation; his April 20, 2011, psycho-educational report; his April 20, 2011, vocational interview and his social history update. The CSE relied primarily on the December 2011, Rebecca School progress report, which included information from an occupational therapist, a counselor, a speech therapist and S.H.'s teachers at the Rebecca School.  Dr. Czarnecki, the district psychologist, testified that the CSE also relied on verbal input from meeting participants and that the goals included in the IEP were read aloud and reviewed one by one with S.H.'s parents.

The IEP addressed different aspects of S.H.'s performance, including academic achievement, functional performance, learning characteristics, social and physical development and management needs.  Regarding S.H.'s academic performance, the IEP recorded that S.H. should "learn his phone number . . . improve his skill at answering 'when' and 'why' questions . . . [and] make money combinations with coins."  As to his social development, the IEP recommended that S.H. "be able to tolerate frustration when upset by a peer's behavior or by a change in his schedule . . . [and] remain in a continuous flow of interaction for more than 30 circles when challenged."  In regards to his physical development, the IEP recommended that S.H. "increase his flexibility and low frustration tolerance toward anticipation of failure when performing a novel activity . . . [and] improve handwriting for letter formation, sizing, spacing and alignment."

The IEP listed 16 annual goals for S.H. to attain during the 2012-2013 school year.  For each annual goal, the IEP provided short-term objectives and/or benchmarks to evaluate S.H.'s progress in attaining the annual goal over the course of the year.

The IEP concluded with a recommendation that S.H. be placed in a 6:1+1 class in a specialized school with a 12-month program, and provided with related services including speech-language therapy (individual service) twice a week for 30 minutes; speech-language therapy (group of 2) once a week for 30 minutes; OT (individual service) 4 times a week for 30 minutes; OT (group of 2) once a week for 30 minutes; counseling services (individual service) once a week for 30 minutes; and counseling services (group of 2) once a week for 30 minutes. Each of these services was to take place at a location outside of the classroom.

### C.    Rejection of the Recommended School Replacement

In May 2012, S.H.'s parents signed an enrollment contract with the Rebecca School and an addendum with a schedule of payments for the 2012-2013 school year.  On June 11, 2012, the district notified the parents that S.H. had been assigned to P369K@P005, a public school located in Brooklyn, New York.  By letter dated June 18, 2013, the parents informed the district that they intended to visit P369K@P005 to determine whether it was an appropriate placement.  In the letter, the parents indicated that, if they found that the placement at P369K@P005 fell short of S.H.'s needs, S.H. would attend the Rebecca School and the parents would request district funding.

By letter dated July 9, 2012 ("July 9 letter"), the parents notified the district that they had visited P369K@P005 and they believed that the school would not meet their son's needs.  The parents noted certain failings of the school including: lack of an occupational therapist on staff; lack of a sensory gym; lack of a separate speech-language therapy room; that the speech and OT

sessions would be push-in service (i.e., in the classroom); and that they were told by a social worker at P369K@P005 that the school was inappropriate for S.H.

In a letter dated August 17, 2012, the parents notified the district that S.H. would be attending the Rebecca School and they would seek tuition reimbursement from the district.  S.H. attended the Rebecca School for the entirety of the 2012-2013 school year.

### D.      Due Process Complaint and Impartial Hearing

On December 19, 2012, the parents filed a due process complaint and requested an impartial hearing.  The complaint alleged that the district failed to offer S.H. a FAPE for the 2012-2013 school year for the following reasons:  (1) the parents never received a copy of S.H.'s IEP; (2) the details regarding the annual goals in the IEP were not discussed at the CSE meeting; (3) the IEP did not accurately reflect S.H.'s then-present levels of performance and individual needs; (4) the goals in the IEP did not include measurement criteria; (5) the short-term objectives in the IEP relating to visual spatial skills and OT were "unrealistic"; (6) the speech-language short-term objectives in the IEP failed to take into account S.H.'s "spatial issues"; (7) the IEP failed to include parent counseling and training; (8) the related services listed on the IEP could not be implemented at P369K@P005; (9) P369K@P005 lacked a sensory gym; and (10) bus transportation to and from P369K@P005 would not be appropriate for S.H.  The parents asserted that their placement of S.H. at the Rebecca School was appropriate and that equitable considerations favored their request for tuition reimbursement.

An impartial hearing took place over four non-consecutive days, beginning on April 15, 2013, and concluding on July 22, 2013.  Seven witnesses testified, including individuals who served on the CSE.  The witnesses included Christine Quintana, a social worker from P369K@P005; Dr. Craig Czarnecki, the school psychologist for the district; Tina McCourt, the

Program Director at the Rebecca School; Rebecca Lubin, S.H.'s teacher at the Rebecca School; Liza Bernabeo, a speech language pathologist at the Rebecca School; Toni Sheridan, the supervisor of OT at the Rebecca School; and Bridget Petrie, S.H.'s mother.

### E.    The IHO Decision

On September 5, 2013, the IHO issued a 26-page decision with multiple findings of fact and conclusions of law.  In respect of the first prong of the *Burlington/Carter* test, requiring the district to establish that it provided the student a FAPE, the IHO found that a FAPE was offered to S.H.  In support of this conclusion, the IHO found, based on the record, that (1) the parents were provided with a meaningful opportunity to participate in the CSE meeting, (2) the CSE had available to it evaluations specifying S.H.'s then-present levels of performance, (3) S.H. was properly classified with a speech or language impairment, (4) the recommendation for a 6:1+1 special class with related services of speech-language therapy, OT and counseling was an appropriate placement, and (5) the district made a timely and appropriate site offer at P369K@P005.  Having found that the DOE offered S.H. a FAPE for the 2012-2013 school year, the IHO did not undertake any analysis pursuant to prongs 2 and 3 of the *Burlington/Carter* test regarding the appropriateness of the parents' unilateral placement and equitable considerations.

### F.    The SRO Appeal and Decision

The parents appealed the IHO Decision in a petition dated October 8, 2013 (the "Petition").  The Petition sought a reversal of the IHO's determination that S.H. was provided a FAPE for the 2012-2013 school year, a determination that the parents' unilateral placement of S.H. at the Rebecca School was appropriate and a determination that equitable considerations favored the parents.  The parents argued that (1) the district significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to

S.H. because by the time they received the IEP in June 2012, two weeks before the school year

began, it was too late to reconvene the CSE; (2) their participation was also impeded because

there was no discussion at the CSE of the goals that were included in the IEP; (3) the IEP's

description of S.H.'s levels of educational performance was inaccurate because it did not fully

repeat the description provided by the Rebecca School progress report; (4) the goals in the IEP

were unmeasurable because they did not make distinctions between annual goals and short-term

objectives; (5) the IEP should have included more goals to address S.H.'s spatial deficits and one

of the two goals addressing S.H.'s spatial issues contained no measurable criteria; (6) some of

the goals in the IEP would be met before the start of the 2012-13 school year and the goals were

drafted to be implemented in a 8:3+1 class; (7) the IEP failed to include parent counseling and

training; (8) the IEP should have reflected S.H.'s need for a sensory gym and S.H.'s diagnosis of

Tourette's syndrome; (9) the 6:1+1 placement was inappropriate; and (10) P369K@P005 was

not appropriate for S.H. due to the presence of general education students, the method of food

preparation and the lack of a feeding group.

On December 19, 2013, the SRO issued the SRO Decision, which affirmed the findings

of the IHO Decision.  The SRO Decision declined to consider three of the claims asserted by the

parents (numbered 6, 9 and 10 above), on grounds that they did not appear in the parents' due

process complaint notice.  The SRO found that none of the actions or omissions of the district

denied S.H. a FAPE.  Regarding the parents' participation in the development of the IEP, the

SRO concluded that the evidence showed that the parents had an opportunity to discuss the goals

in the IEP and that nothing in the record indicated that the parents' opportunity to participate was

impeded.  The SRO also found that the parents' receipt of the IEP two weeks before the school

year began did not significantly impede the parents' opportunity to participate in the decision-making process.

The SRO concluded that S.H.'s IEP was adequate based on a number of findings.  First, the SRO found that the IEP accurately reflected S.H.'s then-present levels of academic achievement and functional performance.  Second, the SRO found that the objectives in the IEP appropriately addressed S.H.'s needs and were not "unrealistic."  The SRO observed that there were two annual goals and six corresponding short-term objectives that related to S.H.'s spatial issues.  The SRO found that the majority of the short-term objectives "contain[ed] sufficiently detailed information regarding the conditions under which each objective was to be performed and the frequency, duration, and percentage of accuracy required for measurement of progress."  Third, the SRO found that the failure to recommend parent counseling and training in S.H.'s IEP did not amount to a FAPE denial because "[t]he hearing record d[id] not indicate that the parents had significant need for parent counseling and training at the time of the CSE meeting."

The SRO declined to rule on the merits of the parents' claim that P369K@P005 was inappropriate for S.H., reasoning that any inquiry into the appropriateness of the school was improper since "[c]hallenges to an assigned public school site are generally relevant to whether the district properly implemented the student's IEP, which is speculative when the student never attended the recommended placement."  Notwithstanding this conclusion, the SRO determined that, "assuming for the sake of argument that the student had attended the district's recommended program at the assigned public school site," the designated school site would not have deviated from S.H.'s IEP in a material way that would have resulted in a failure to offer S.H. a FAPE.

### III.    LEGAL STANDARD

A motion for summary judgment in the IDEA context is "in substance an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (citation omitted); *accord M.W.*, 725 F.3d at 138 ("Summary judgment in the IDEA context . . . is only a pragmatic procedural mechanism for reviewing administrative decisions.") (internal quotation marks and citations omitted).  The task of a district court reviewing an SRO decision is to determine whether the SRO's decision is supported by "the preponderance of the evidence, taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties." *Grim*, 346 F.3d at 380 (internal quotation marks omitted).  In evaluating the sufficiency of an IEP, neither the administrative officers nor the courts may rely on "retrospective testimony that the school district would have provided additional services beyond those listed in the IEP . . . ." *R.E.*, 694 F.3d at 186.

A district court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam) (alterations in original) (internal quotation marks and citation omitted).  Accordingly, a federal court may not "substitute [its] own notions of sound educational policy for those of the school authorities." *M.W.*, 725 F.3d at 139 (internal quotation marks omitted).  "[D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." *M.H.*, 685 F.3d at 244.

A district court "'must defer to the reasoned conclusions of the SRO as the final state administration determination.'" *R.E.*, 694 F.3d at 189 (quoting *M.H.*, 685 F.3d at 246). "The deference owed depends on both the quality of the opinion and the court's institutional competence." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014). A reviewing court may take into account "whether the decision being reviewed is well reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *R.E.*, 694 F.3d at 189 (internal quotation marks and citation omitted).

To determine whether an IEP complies with the IDEA, "courts make a two-part inquiry that is, first, procedural, and second, substantive." *Id.* at 189-90. The procedural inquiry requires courts to examine "whether there were procedural violations of the IDEA, namely, whether the state has complied with the procedures set forth in the IDEA." *Id.* at 190 (internal quotation marks and citation omitted). Procedural violations warrant reimbursement only where the violations individually or cumulatively "'impeded the child's right to a [FAPE],' 'significantly impeded the parents' opportunity to participate in the decision[-]making process,' or 'caused deprivation of educational benefits.'" *Id.* (first alteration in original) (quoting 20 U.S.C. § 20 U.S.C. 1415(f)(3)(E)(ii)).

The substantive inquiry requires courts to "examine whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits." *Id.* (internal quotation marks, citation and alteration omitted). The IDEA does not "guarantee any particular level of education," or "require that a child be provided with the optimal programmatic alternative." *C.F. ex rel. R.F.*, 746 F.3d at 72 (internal quotation marks and citation omitted). Instead, it requires "selection of a program that provides a 'basic floor of opportunity,'" and that is "likely to produce progress, not regression." *Id.* (internal quotation

marks and citation omitted).  Unlike procedural inadequacy, "[s]ubstantive inadequacy

automatically entitles the parents to reimbursement."  *R.E.*, 694 F.3d at 190.

## IV.    DISCUSSION

Plaintiffs assert that the SRO improperly limited the scope of his review, and erroneously

affirmed the IHO's decision that the district had not denied S.H. a FAPE on either substantive or

procedural grounds.  Plaintiffs have not shown that the SRO Decision is not entitled to

deference.  The SRO Decision reflects a comprehensive review of the record and articulates clear

explanations for each conclusion.  It examines the parties' arguments in detail and supports each

finding with multiple citations to the record.  Courts generally "'defer to the final decision of the

[SRO]'", *A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171

(citation omitted), especially where the decision is "thorough and careful," *M.H.*, 685 F.3d at

241.  Because the SRO's findings are well-reasoned and supported by a preponderance of the

evidence, the SRO Decision is affirmed in its entirety.

### A.    Scope of Review

Plaintiffs argue that both the IHO and the SRO erred in declining to address certain issues

raised by the parents in their Petition.  Because the parents failed to raise these issues in their due

process complaint, the IHO and SRO correctly limited the scope of their review.

Under the IDEA, "[t]he party requesting the due process hearing shall not be allowed to

raise issues at the due process hearing that were not raised in the [due process complaint], unless

the other party agrees otherwise."  20 U.S.C. § 1415(f)(3)(B).  A district court does not have

subject matter jurisdiction over a claim that is not raised in the due process complaint and

exhausted as part of the administrative review process.  *Cave v. E. Meadow Union Free Sch.*

*Dist.*, 514 F .3d 240, 243 (2d Cir. 2008).  Accordingly, "a party's failure to raise an argument

during administrative proceedings generally results in a waiver of that argument." *R.B. v. Dep't of Educ. of N.Y.C.*, No. 10 Civ. 6684, 2011 WL 4375694, at *6 (S.D.N.Y. Sept. 16, 2011) (citing *E.H. v. Bd. of Educ. of Shenedehowa Cent. Sch. Dist.*, 361 F. App'x 156, 158 (2d Cir. 2009)).

The Petition raised six claims that were not raised in the due process complaint, including: (1) some of the goals in the IEP were anticipated to be achieved by S.H. before the start of the 2012-2013 school year; (2) the goals in the IEP were written to be implemented in a 8:1+3 class; (3) the 6:1+1 placement was inappropriate; (4) the presence of general education students at the school environment at PS369K would not be appropriate for S.H.; (5) the food preparation and lack of feeding group at PS369K would not be appropriate for S.H.; and (6) the parents were told by a school social worker during their visit that PS369K would not be appropriate for S.H.  The SRO correctly determined that these claims were beyond the scope of his review because they were not raised in the due process complaint.  This Court likewise lacks subject matter jurisdiction to consider these claims.

Plaintiffs argue that they raised five of the six claims in a July 9, 2012, letter to the district that was referenced in the due process complaint, which sufficiently apprised the district of the claims and warrants flexible application of the waiver rule.  In support of their argument, Plaintiffs cite two cases where the Second Circuit advised against the waiver rule being "mechanically applied."  In neither case, however, were the potentially waived claims completely absent from the due process complaint.  *P.K. v. N.Y.C. Dep't of Educ.*, 526 Fed. App'x 135, 140 n.6 (2d Cir. 2013) (no waiver where claims were not asserted in given section of complaint but were included elsewhere in complaint); *C.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 78 (2d Cir. 2014) (no waiver where broad phrasing of the claims asserted in the complaint encompassed more narrowly framed claim subsequently asserted).  Here, the due process

complaint makes no mention of the six claims now asserted by Plaintiffs, and references the July 9 letter only as part of its chronology of events.  This was insufficient to put the district on notice of the additional claims the parents intended to assert and accordingly does not warrant an exception to the waiver rule.

> **B.       Procedural Violations**

Plaintiffs allege four procedural FAPE violations: (1) failure to provide the parents with the IEP before the start of the school year; (2) failure to provide the parents with an opportunity to participate in the IEP development; (3) failure to provide for parent counseling and training; and (4) failure to provide an accurate description of S.H.'s then present levels of performance. The SRO concluded that none of the alleged violations deprived the parents of an opportunity to participate or denied S.H. a FAPE.  The SRO's determinations are supported by a preponderance of the evidence and are upheld.

> **i.       Failure to Provide Parents with IEP Before Start of School Year**

Plaintiffs assert that S.H. was denied a FAPE because the DOE failed to provide the parents with S.H.'s IEP before the start of the school year.  Because the record establishes that the parents timely received the IEP, the SRO's determination is affirmed.

Under state and federal regulations, an IEP must be in effect for the student at the beginning of the school year.  34 C.F.R. § 300.323(a); 8 N.Y.C.R.R. 200.4(e)(1)(ii).  The Second Circuit has held that as long as the parents are provided with the IEP before the first day of school, the district has fulfilled its legal obligation under the statute.  *See Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 193-94 (2d Cir. 2005) ("Although the [parents] might have preferred to receive the IEP sooner, and we are sympathetic to the frustration they undoubtedly felt in not receiving it sooner despite repeated requests, the District fulfilled its legal obligations by

providing the IEP before the first day of school."); *see also B.P. v. N.Y.C. Dep't of Educ.*, 841 F. Supp. 2d 605, 614 (E.D.N.Y. 2012) (same).

Here, the parents received a copy of the IEP on June 15, 2012, approximately two weeks before the start of the school year on July 1, 2012.  Because the parents received S.H.'s IEP before the start of the school year, the SRO's determination that S.H. was not denied a FAPE on this ground is upheld.

### ii.  Participation in the Development of S.H.'s IEP

Plaintiffs argue that S.H. was denied a FAPE because the parents were denied the opportunity to participate meaningfully in the development of S.H.'s IEP.  Because the SRO's finding that the parents were afforded the opportunity to participate meaningfully in the development of S.H.'s IEP is supported by a preponderance of the evidence, the SRO's determination is upheld.

The IDEA mandates that a district afford the parents an opportunity "to participate in meetings with respect to the identification, evaluation, and educational placement of the child." 20 U.S.C. § 1415(b)(1).  "Parental participation requires an opportunity to examine records, participate in meetings, and to obtain an independent evaluation."  *E.F. v. N.Y.C. Dep't of Educ.*, No. 12 Civ 2217, 2013 U.S. Dist. LEXIS 117143 (E.D.N.Y. Aug. 19, 2013) (quoting *T.L. v. Dep't of Educ. of N.Y.C.*, No. 10 Civ. 3125, 2012 WL 1107652, at *14 (E.D.N.Y. Mar. 30, 2012)).  The record indicates that both parents attended the March 2012 CSE meeting, which lasted between one and two hours.  S.H.'s mother testified that annual goals and short-term objectives were discussed at the CSE meeting.  Her testimony was corroborated by S.H.'s teachers and the district psychologist.

The parents argue that they were denied an opportunity to participate because the IEP goals were copied from the Rebecca School progress report instead of being developed as part of an interactive discussion.  The record contradicts this assertion, establishing that the goals were individually evaluated and discussed.  The district psychologist, for example, testified that there was a "lengthy discussion" about S.H.'s performance at the time and whether the student's progress toward the goals identified in the Rebecca School report used by the CSE remained relevant.  S.H.'s teacher also testified that the IEP goals were taken from the December 2011 Rebecca School progress report, but that they also were read aloud at the meeting and that she remembered a discussion of creating goals for S.H.  As discussed above, the testimony of both the district psychologist and S.H.'s teacher was consistent with the testimony of S.H.'s mother that annual goals and short-term objectives were discussed at the CSE meeting.

Because a preponderance of the evidence supports the SRO's determination that the parents were afforded an opportunity to participate in the development of the IEP, the SRO's decision is upheld.

### iii.    Parent Counseling and Training

Plaintiffs argue that S.H. was denied a FAPE because the IEP omitted parent counseling and training.  Because an IEP's lack of parent counseling and training alone does not typically result in a FAPE denial, and S.H. was not denied a FAPE on other grounds, the SRO's determination that the failure to include parent counseling and training did not result in a FAPE denial is upheld.

State regulations require that an IEP include parent counseling and training when appropriate.  *See* 8 N.Y.C.R.R. 200.4(d)(2)(v)(b)(5) ("The IEP shall indicate . . . the extent to which the student's parents will receive parent counseling and training . . . when appropriate.").

Failure to provide parent counseling may constitute a procedural violation, but "ordinarily does not result in a FAPE denial or warrant tuition reimbursement." *M.W.*, 725 F.3d at 142; *accord T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170 (2d Cir. 2014) (holding that "parent counseling and training as part of [the student's] ESY program was not a sufficiently serious procedural violation to deny [the student] a FAPE.").

The SRO found that the failure to include parent counseling and training in the IEP constituted a procedural violation of New York law but did not result in a FAPE denial. The SRO noted that the district psychologist testified that parent training and counseling was "programmatic," such that the parents would have received counseling and training regardless of its inclusion in the IEP. The SRO also observed that the parents had already received substantial training during the years S.H. attended the Rebecca School, and accordingly did not require additional training. The SRO did not cite any precedent for the proposition that a district's obligations to provide parent counseling and training are fulfilled so long as the parents received counseling and training in previous years, and none appears to exist in this Circuit. Accordingly, the SRO erred in its reliance on the parents' previous training. The error is not outcome determinative, however, because the failure to include parent counseling and training is insufficient, on its own, to amount to a FAPE denial. The SRO's determination that the failure to include parent counseling and training on the IEP did not result in a FAPE denial is accordingly upheld.

### iv.    Student's Present Levels of Performance

Plaintiffs argue that S.H. was denied a FAPE because the IEP "failed to contain an accurate description of his then present levels of academic achievement at the time of its development." Because a preponderance of the evidence supports the SRO's determination that

the IEP accurately described S.H.'s then present levels of performance, the SRO's determination is upheld.

In New York, an IEP must "report the present levels of academic achievement and functional performance and indicate the individual needs of the student." 8 N.Y.C.R.R. 200.4(d)(2)(i). The SRO determined that the information contained in the present levels of performance section of the IEP was accurate because it was drafted in accordance with discussions with S.H.'s parents and teachers from the Rebecca School, and using the Rebecca School progress report as a guide.

The record fully supports the SRO's determination. The district psychologist testified that the IEP's levels of present performance were based on the Rebecca School report, which was written by S.H.'s teacher, and that the district psychologist recalled asking and receiving confirmation from S.H.'s teacher that the report "was an accurate reflection of the child's functioning." The district psychologist also testified that the information about the student's present levels of performance was drafted according to a discussion during the CSE meeting in which S.H.'s parents participated. The SRO's determination is upheld because a preponderance of the evidence supports the SRO's determination that the description of S.H.'s present levels of performance was accurate and based on a thorough discussion with the individuals most knowledgeable about his performance—his teacher and his parents.

### C. Substantive Violations

Plaintiffs allege four substantive violations of the IDEA: (1) the goals in the IEP were inappropriate to fit S.H.'s needs, in particular because one of the goals listed was anticipated to be met before the start of the 2012-2013 school year and because the goals were "unuseable" outside of the 8:1+3 class ratio; (2) the IEP failed to contain measurable annual goals and

objectives; (3) the IEP failed to include goals adequately addressing S.H.'s visual and spatial

needs; and (4) the IEP inappropriately placed S.H. in a 6:1+1 program.  For the reasons

discussed above, the first and fourth alleged violations are beyond the scope of this Court's

review.  The second and third alleged substantive violations are unsupported by the record and

were properly rejected by the SRO.

###### i.        Claim Two:  Measurability of Annual Goals

Plaintiffs assert that the CSE failed to include measurable annual goals on S.H.'s IEP.

S.H.'s IEP contains 16 annual goals, listed in table format.  For each goal, there are three indicia

of progress: (1) "measure to determine whether goal has been achieved"; (2) "how progress will

be measured"; and (3) "when progress will be measured."  Plaintiffs take issue with the fact that

for each annual goal, the "measure to determine whether goal has been achieved" consists of a

cross-reference to the short-term objectives.  They assert that the district was required to provide

indicia of measurability for attainment of the annual goals independent of the short-term

objectives.  The SRO determined that the annual goals "lacked criteria to determine if a goal had

been met" but concluded that the short-term objectives "contained sufficient specificity by which

to evaluate the student's progress or gauge the need for continuation or revision."  This

determination is supported by a preponderance of the evidence.

An IEP must include a description of how the student's progress toward meeting the

annual goals described in the IEP will be measured and when progress reports will be provided.

20 U.S.C. § 1414(d)(1)(A)(i)(III); *see also* 8 N.Y.C.R.R. § 200.4(d)(2)(iii)(b) ("Each annual goal

shall include the evaluative criteria, evaluation procedures and schedules to be used to measure

progress toward meeting the annual goal."); 34 C.F.R. § 300.320(a)(3) (same).  "[T]he

sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA

requires deference to the expertise of the administrative officers." *Grim*, 346 F.3d at 382.

The SRO's conclusion that the short-term objectives remedied any deficiency in the

measurability of the annual goals is supported by the record.  As an initial matter, the district

psychologist testified that the short-term objectives "composed part of the annual goals,"

indicating that it was not unreasonable for the IEP to rely on the short-term objectives as a means

of measuring the attainment of the long-term objectives.  *Accord A.D. v. N.Y.C. Dep't of Educ.*,

No. 12 Civ. 2673, 2013 WL 1155570, at *11 (S.D.N.Y. Mar. 19, 2013) (upholding SRO's

determination that "'the corresponding short-term objectives to [the] annual goals were detailed

and measureable and therefore the structure and content in these short-term objectives

sufficiently cured any deficiencies.'").  Further, the short-term objectives are both detailed and

appear sufficiently tailored to the annual goals, the achievement of which they are intended to

support.  For example, an annual goal consisting of "improv[ing] sensory processing and

regulation needed to understand and effectively interact with people and object in the school and

home environment" lists three short-term objectives: (1) when environment "becomes

overwhelming," taking a break after one verbal cue from an adult in four out of five

opportunities; (2) participating in structured movement activity with peers for 20 minutes "while

maintaining self-regulation and behavioral organization with minimal cueing 90% of the time";

and (3) tolerating "various types of sensory input during sensorimotor activities . . . as evidenced

by participating without retreating from the task for 10-15 minutes in 3 out of 4 opportunities."

On the basis of the record, along with the heightened deference owed to the SRO for

determinations relating to the substantive sufficiency of the goals in an IEP, the SRO's

determination is upheld.

### ii.   Claim Three: Appropriateness of Goals Regarding Spatial and Visual Deficits

Plaintiffs assert that the IEP failed to include adequate goals regarding S.H.'s spatial and visual deficits. The SRO rejected this argument, finding that it was contradicted by the record. The SRO determined that the IEP's goals relating to S.H.'s spatial and visual needs were both comprehensive and consistent with the Rebecca School report. The SRO's determination is supported by a preponderance of the evidence. The IEP lists both short-term and annual goals specifically pertaining to S.H.'s spatial and visual needs, ranging from discrete tasks, like copying a teacher's design using pattern blocks, to more expansive projects, like making a plan and mapping out a community outing. Because the SRO's findings are supported by the record, and because an SRO's determination regarding the substantive adequacy of an IEP is entitled to deference, *Grim*, 346 F.3d at 382, the SRO's determination is upheld.

### D.   The Assigned Public School Site

Plaintiffs argue that the IHO and SRO erred in declining to consider the appropriateness of the designated public school site because the evidence the parents sought to present for that claim was speculative. The SRO properly declined to address the parents' arguments concerning the appropriateness of the school site.

Parents may not rely on "[s]peculation that the school district will not adequately adhere to the IEP" as a basis for unilaterally placing their child in an alternative school. *R.E.*, 694 F.3d at 195. A "challenge[ ] [to] the DOE's choice of school, rather than the IEP itself" is appropriate only in "a later proceeding to show that the child was denied a free and appropriate education because necessary services included in the IEP were not provided in practice." *F.L. ex rel. F.L. v. New York City Dep't of Educ.*, 553 F. App'x 2, 8 (2d Cir. 2014) (internal quotation marks and citation omitted).

Because the SRO correctly concluded that a challenge to the district's choice of school is improper where the student never attended the school, it is unnecessary to reach the merits of the claim, and the SRO's ruling that the school placement did not result in a FAPE denial is upheld.

**V.      CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motions at Docket Nos. 13 and 18.

Dated:          December 3, 2014
                New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE